UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

VALENTIA GLOBAL, LLC ,                    CASE NO.: 18-25653-RAM

      Debtor.                              Chapter 11

_____/


DEBTOR'S COMBINED CHAPTER 11 PLAN OF
REORGANIZATION AND DISCLOSURE STATEMENT

Dated:  June 17, 2019




Aaronson Schantz Beiley, P.A.
*Counsel to Debtor*
One Biscayne Tower, Floor 34
2 S. Biscayne Boulevard
Miami, Florida 33131
Phone: 786-594-3000
Fax:    305-579-9073
Email: tmckeown@aspalaw.com


By:    /s  *Tamara D. McKeown*
       Tamara D. McKeown, Esq.
       Florida Bar No.: 773247

i

# ARTICLE I
# SUMMARY OF THE PLAN

The Debtor and Debtor-in-Possession, Valentia Global, LLC ("Valentia" or "Debtor"), by and through counsel and pursuant to §§ 1121 and 1123 of the United States Bankruptcy Code and Rule 3016 of the Federal Rules of Bankruptcy Procedure, proposes this Chapter 11 Plan of Reorganization (the "Plan") for the resolution of claims against, and interests in, the Debtor. The Debtor is the proponent of this Plan within the meaning of §1129 of the Bankruptcy Code. Valentia is a Small Business Debtor as defined in 11 U.S.C. §101(51D).

This Plan proposes the sale and disposition of the Debtor and all of Debtor's assets ("Valentia Sale" or "Bechna Purchase Transaction") to Bechna, LLC ("Bechna"), an unrelated third party which upon Plan confirmation will become the owner of the Reorganized Debtor and will assume control of Debtor's Restaurant and restaurant operations. The proceeds from the Valentia Sale to Bechna will provide the source of funds from which payments under the Plan will be made. The consideration which Bechna will pay to purchase the Valentia Assets and the Valentia Membership Interests will be comprised of: (i) the cash required to pay all amounts due on the Effective Date as described in this Plan (which funds are in addition to substantial cash infusions which Bechna has made to the Debtor during the Chapter 11 Case to assist Debtor with post-petition operating expenses); together with (ii) the funds necessary to pay all future Plan Distributions to be made over the life of this Plan to Creditors holding Allowed Claims through the Reorganized Debtor.

As described herein, this Plan provides for: (i) full payment on the Effective Date of all Administrative Expense Claims approved by the Bankruptcy Court; (ii) full payment on the Effective Date of all Allowed Priority Wage Claims; (iii) full payment of Debtor's Allowed Secured Claim over nineteen (19) months pursuant to an agreement (still to be finalized as of this writing) between Lanamar and Bechna, with Debtor's consent; (iv) full payment of all Allowed Priority Tax Claims over the five (5) year life of the Plan; (v) the assumption of Debtor's unexpired nonresidential Lease and cure of Debtor's pre-petition rent default; (vi) creation of a Convenience Class and partial payment (50%) of all Allowed Convenience Class Claims on the Effective Date; and (vii) partial payment (20%) of all Allowed Unsecured Claims over the five (5) year life of the Plan. This Plan is subject to, and conditioned upon, Bankruptcy Court approval of the proposed Valentia Sale to Bechna described in this Plan. Upon confirmation of the Plan, Bechna will become owner of the Reorganized Debtor free and clear of all liens, claims, interests and encumbrances except as described in this Plan.

The Disclosure Statement required by §1125 of the Bankruptcy Code is included within this Plan, and contains a discussion, *inter alia*, of the history of the Debtor, financial information regarding the Debtor and its assets, the major events of this Chapter 11 Case, treatment of Claims against and interests in the Debtor, risk factors, liquidation analysis, tax implications, alternatives to the Plan, a summary and analysis of this Plan, and certain related matters. All Holders of Claims against the Debtor are encouraged to read this Plan and Disclosure Statement, and to seek the advice of counsel with respect to such Holder's rights and treatment under the Plan.

Subject to certain restrictions and requirements set forth in § 1127 of the Bankruptcy Code, Bankruptcy Rule 3018, and in this Plan, the Debtor reserves the right to alter, amend, modify, revoke or withdraw this Plan prior to the Effective Date (as defined more fully below).

1

## ARTICLE II
## DEFINITIONS AND GENERAL PROVISIONS

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article II of the Plan, unless the context requires otherwise.  Any term that is not defined herein but is otherwise defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed therein.

1.1.    Administratively Closed.  This Chapter 11 Case will become non-active and closed upon appropriate application made to the Court after Substantial Consummation.

1.2.    Administrative Creditor. Any Creditor entitled to payment of an Administrative Expense Claim.

1.3.    Administrative Expense Claim. Any Claim for payment of any administrative cost or expense of administering this Chapter 11 case allowed under Section 503(b) of the Bankruptcy Code and otherwise entitled to priority under §507(a)(1) of the Bankruptcy Code, including, *inter alia*, any actual and necessary expenses of preserving the Debtor's estate; any actual and necessary expenses of operating the business of the Debtor, including loans or other advances to the Debtor-in-Possession, and all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under 11 U.S.C. § 330; and any fees or charges assessed against the Debtor's estate under 28 U.S.C.  1930.

1.4.    Allowed Claim. Any Claim against the Debtor, proof of which was filed on or before the claims bar date pursuant to Bankruptcy Rule 3003 or which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or the Bankruptcy Rules, or as to which any objection has been determined by a Final Order.  Unless otherwise specified herein, the term "Allowed Claim" shall not include interest on the principal amount of such Claim from and after the Petition Date.

1.5.    Allowed Convenience Claim. Any Allowed Unsecured Claim that does not exceed the total amount of $2,500.00.

1.6.    Allowed Priority Claim. Any Allowed Claim of a creditor which is designated a priority claim pursuant to Section 507 of the Bankruptcy Code.

1.7.    Allowed Secured Claim. Any Allowed Claim of a creditor secured by a lien on property in which the Debtor has an interest in accordance with Section 506(a) of the Bankruptcy Code.

1.8.    Allowed Unsecured Claim. Any Allowed Claim not otherwise allowed as an Administrative Expense Claim, Priority Claim or Secured Claim.

2

1.9.    <u>ASBPA</u>.  Aaronson Schantz Beiley P.A., the Debtor's attorneys.

1.10.    <u>Assets</u>. Collectively, all of the Property of the Debtor's Estate (including, *inter alia*, all tangible and intangible assets, property, interests and Avoidance Actions), as defined by Section 541 of the Bankruptcy Code, wherever situated as such properties exist on the Effective Date or thereafter.

1.11.    <u>Avoidance Action</u>. Any claim or cause of action of the Estate arising out of or maintainable pursuant to  Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

1.12.    <u>Ballot</u>. Collectively, each of the ballot forms distributed after Bankruptcy Court approval of the Disclosure Statement to Holders of Claims included in the Classes that are Impaired under this Plan and are otherwise entitled to vote on this Plan.

1.13.    <u>Bankruptcy Case</u>.  This Chapter 11 case initiated by the Debtor's filing of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code on the Petition Date.

1.14.    <u>Bankruptcy Code</u>.  The United States Bankruptcy Code, as amended, and as set forth in Section 101, *et seq.*, of Title 11, United States Code.

1.15.    <u>Bankruptcy Court</u>.  The United States Bankruptcy Court for the Southern District of Florida, having jurisdiction over this Bankruptcy Case.

1.16.    <u>Bankruptcy Rules</u>. The Federal Rules of Bankruptcy Procedure, as amended and as applicable to cases pending before the Bankruptcy Court.

1.17.    <u>Bechna</u>.  Bechna, LLC, a Florida Limited Liability Company owned by Benjamin J. Navarro.  Benjamin Navarro and Paloma Navarro are the Manager Members of Bechna.  Bechna is unrelated to the Debtor or its principal, Ivan Marzal, and is the proposed purchaser of the Debtor, including the Valentia Assets and the Valentia Membership Interests as described in this Plan.  Upon confirmation of this Plan by the Bankruptcy Court, Bechna will become the owner of the Reorganized Debtor. Thereafter the Reorganized Debtor will operate the Restaurant as a going concern entity and will make all Distributions described in this Plan.

1.18.    <u>Bechna Purchase Transaction</u>.  The purchase by Bechna of the Valentia Assets and the Valentia Membership Interests (also called the "Valentia Sale"), subject to certain post-confirmation liens and encumbrances as described in this Plan, all of which shall be deemed satisfied upon completion of the Plan Distributions.  This Plan contemplates that the Bankruptcy Court's confirmation of the Plan will necessarily and inherently include, *inter alia*, the Court's approval of the Bechna Purchase Transaction and the Court's authorization for the Debtor to consummate the Bechna Purchase Transaction, as set forth more fully herein.  The proceeds from

the Bechna Purchase Transaction will provide the source of funds from which all Distributions will be made.

1.19.   <u>Bechna Purchase Price</u>.  The consideration which Bechna will pay to purchase the Valentia Assets and the Valentia Membership Interests, which will be comprised of: (i) the cash required to pay all amounts due on the Effective Date as described in this Plan (which funds are in addition to substantial cash infusions which Bechna has made to the Debtor during the Chapter 11 Case to assist Debtor with post-petition operating expenses); together with (ii) the funds necessary to pay all future Plan Distributions to be made over the life of this Plan to Creditors holding Allowed Claims through the Reorganized Debtor.

1.20.   <u>Chapter 11 Case</u>. This Chapter 11 case, which commenced upon the filing of a voluntary Chapter 11 petition on December 17, 2018 in which the Debtor is Valentia Global, LLC.

1.21.   <u>Claim</u>.  Any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured.

1.22.   <u>Claims Objection Deadline</u>. Thirty days before the Confirmation Hearing shall be the last day by which the Debtor or any other interested party may file an Objection to the Allowance of any Claim.

1.23.   <u>Code</u>.  The United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

1.24.   <u>Confirmation</u>.  The confirmation of this Plan by the Bankruptcy Court pursuant to the Bankruptcy Code.

1.25.   <u>Confirmation Date</u>. The date upon which the Bankruptcy Court, District Court, or other court of competent jurisdiction shall enter an Order confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, or if the operation of such Order is stayed, the date upon which such stay expires or is vacated.

1.26.   <u>Confirmation Hearing</u>.  The hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under § 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.27.   <u>Confirmation Order</u>.  An Order entered by the Bankruptcy Court, District Court, or other court of competent jurisdiction confirming this Plan.

1.28.   <u>Consumation of Plan</u>. The Effective Date of the Plan shall be the date that the Plan is deemed substantially consummated.

1.29.   Contested Claim. Any claim as to which the Debtor or any other party(ies) in interest have interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or determined by a Final Order.

1.30.   Convenience Class.  A creditor class comprised of Unsecured Creditors holding Allowed Unsecured Claims of $2,500.00 or less.

1.31.   Court.  The United States Bankruptcy Court for the Southern District of Florida (Miami Division) or any other Court, appellate or otherwise that properly exercises jurisdiction over this Chapter 11 Case.

1.32.   Creditor.  Any person that is the holder of a claim against the Debtor that arose on or before the Petition Date, or a claim against the Debtor's estate of any kind, as specified in 11 U.S.C. §§502(g), 502(h), and/or 502(i).

1.33.   Debtor.  Valentia Global, LLC.

1.34.   Debtor-in-Possession.  The Debtor, Valentia Global, LLC.

1.35.   Default.  A failure by the Debtor to pay Allowed Claim(s) required to be paid by the terms of a confirmed Plan.  The holder of such Allowed Claim(s) may send written notice to the Debtor by certified mail at the Notice addresses of record for Debtor, as reflected in this Plan. The Debtor shall have twenty (20) days from the Debtor's receipt of the notice of default to cure such default.  If the Debtor does not cure such default within the twenty day period, it shall be deemed a Default Event. If there is a dispute as to whether a Default Event has occurred, such dispute may be resolved by the Bankruptcy Court on short notice.

1.36.   Default Event.  An uncured Default pursuant to Paragraph 1.35.

1.37.   DIP Accounts.  The post-petition Debtor-in-Possession bank accounts of Valentia Global, LLC.

1.38.   Disallowed Claim. Any Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is listed in any of the Debtor's Schedules at zero, unknown, contingent, disputed or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in the Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

1.39.   Disclosure Statement. The Disclosure Statement incorporated within this Plan of Reorganization including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3017.1, and Rule 3017-1 of the Local Rules, as such

Disclosure Statement may be further amended, modified or supplemented from time to time.

1.40.    <u>Disputed Claim</u>.  Any Claim or portion thereof which is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

1.41.    <u>Distribution</u>.  The delivery of payments to holders of Allowed Creditor Claims. There shall be a First Distribution under the Plan on the Effective Date, and additional Distributions to holders of Allowed Creditor Claims on a quarterly basis over the course of the Plan Period.

1.42.    <u>Distribution Dates</u>.  The dates on which Distributions shall be made pursuant to the Plan.  The First Distribution Date is the same as the Effective Date.  Subsequent Distributions will be made on a quarterly basis thereafter.

1.43.    <u>Distribution Funds</u>.  The total of all Distributions to Creditors under this Plan.

1.44.    <u>District Court</u>.  The United States District Court for the Southern District of Florida.

1.45.    <u>Effective Date</u>.  The Effective Date shall be five (5) business days after the Confirmation Order has become a Final Order.  The Effective Date shall be the same as the First Distribution Date.

1.46.    <u>Equity Holder</u>.  Ivan Marzal, the Member and owner all Membership Interests in the Debtor, Valentia Global, LLC.

1.47.    <u>Equity Interest</u>. Any equity interest in the Debtor, as represented by Membership Interests.

1.48.    <u>Estate</u>.  The estate created by the commencement of this Bankruptcy Case pursuant to the Bankruptcy Code, including, *inter alia*, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such Estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of §§541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

1.49.    <u>Executory Contract</u>. Any executory contract, unexpired lease or purported executory contract or unexpired lease to which the Debtor is a party.

1.50.    <u>Existing Organizational Documents</u>.  The articles of organization and any other charter documents legally forming and/or organizing the Debtor, and all by-laws as may have been amended and/or restated up to, and in existence as of, the Petition Date. Except to the extent amended or restated by any applicable new Organizational Documents, such Existing Organizational Documents will remain in full force and effect.

6

1.51.    Final Order.  Any order or judgment of the Bankruptcy Court, the District Court, or any other court of competent jurisdiction, including the Confirmation Order, as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.  In the case of an order of the Bankruptcy Court, the time for appeal shall be the time permitted for an appeal to the District Court.

1.52.    First Distribution.  The first Distribution to creditors under the Plan in payment of Allowed Claims, which will be made on the Effective Date.

1.53.    First Distribution Date.  The date on which the First Distribution shall be made pursuant to the Plan.  The First Distribution Date is the same as the Effective Date.

1.54.    1450 Brickell, LLC.  A Florida Limited Liability Company and the Landlord of the premises in which Debtor's Restaurant is located and operating pursuant to the Brickell Lease.

1.55.    Holder. Any holder of a Claim or Equity Interest, as applicable.

1.56.    Impaired Class. Any class of Creditors whose Allowed Claims are impaired by payments as proposed in this Plan, in accordance with 11 U.S.C. § 1124. A class of Creditors is deemed impaired under the Code unless the treatment under the Plan leaves unaltered the legal, equitable, and contractual rights to which such Creditors' Claims entitle them.

1.57.    Lanamar.   Lanamar Group, LLC, the entity which sold the assets and assigned the lease of its restaurant, Perfecto, to the Debtor in April 2016 pursuant to an Asset Purchase Agreement, Promissory Note and related documents.  Lanamar is a Secured Creditor of the Debtor.

1.58.    Lanamar APA.   The Asset Purchase Agreement, Promissory Note and related documents between the Debtor and Lanamar dated on or about April 18, 2016, pursuant to which the Debtor acquired, *inter alia*, the assets and lease of Lanamar's restaurant, Perfecto, which were used to start the Debtor's Restaurant at its location on Brickell Avenue.

1.59.    Lanamar Claim.  The amounts due to Lanamar pursuant to the Lanamar APA and Promissory Note, as reflected in the Proof of Claim filed by Lanamar in the Chapter 11 Case.

1.60.    Lanamar Lien.  Pursuant to agreement between Lanamar and Bechna (which has not been finalized as of this writing), a post-confirmation lien on certain assets of the Reorganized Debtor to be given by the Reorganized Debtor to Lanamar to secure the payment of Distributions to Lanamar as described in this Plan.

1.61.   <u>Landlord</u>.    1450 Brickell, LLC, the landlord of the premises at 1450 Brickell Avenue, Suite 110, Miami, Florida 33131 in which Debtor's Restaurant is located and operating pursuant to the Lease.

1.62.   <u>Lease</u>.   The May 23, 2011 Retail Lease Agreement, with all addendums and assignments, between 1450 Brickell, LLC ("Landlord") and the Debtor, which was assigned to Debtor by Lanamar, with Landlord approval, in April 2016.  The Lease is for the nonresidential premises located at 1450 Brickell Avenue, Suite 110, Miami, Florida 33131, and is scheduled to expire by its terms on May 31, 2022 but is subject to two (2) extension options of five (5) years each if the Lease is not in default as defined therein.  This Plan provides for assumption of the Lease under 11 U.S.C. § 365.

1.63.   <u>Lien</u>. A charge against or interest in property to secure payment of a debt or performance of an obligation, as defined in § 101(37) of the Bankruptcy Code.

1.64.   <u>Local Rule</u>.  One of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida.

1.65.   <u>Madison Acquisitions</u>. Collection agency which received assignment of judgments obtained by Todo Carton USA Corp. and Sysco South Florida, Inc. against the Debtor.

1.66.   <u>Madison Acquisitions Payments</u>.   Payments made by the Debtor to Madison Acquisitions within the ninety (90) day preference period pursuant to writs of execution on judgments obtained against the Debtor by Todo Carton USA Corp. and Sysco South Florida, Inc.

1.67.   <u>Manager</u>.  The Debtor's manager, Ivan Marzal, who also is the sole Member and 100% owner of Membership Interests of the Debtor.

1.68.   <u>Member</u>.  The owners and holders of Membership Interests in the Debtor.

1.69.   <u>Membership Interest</u>.   One or more of the outstanding membership interests in the Debtor, a Florida Limited Liability Company.

1.70.   <u>Merchant Advance</u>. An entity in New York with which the Debtor entered into an Agreement for the Purchase and Sale of Future Receipts on or about June 6, 2018. Merchant Advance subsequently obtained a Confession of Judgment against the Debtor on or about October 24, 2019, which Debtor has listed as a disputed claim in its Schedules.

1.71.   <u>Merchant Advance Lien</u>.  A UCC-1 Financing Statement filed by Merchant Advance with the Florida Secured Transaction Registry on October 4, 2018, which purported to assert a security interest in the Debtor's deposit accounts, contract rights, inventory, fixtures, equipment and other assets, but was filed within the 90 day preference period set forth in 11 U.S.C. §547(b).

1.72.   <u>Objection to Claim</u>.  An objection to claim pursuant to Bankruptcy Rule 3007 and Local Rule 3007-1.

1.73.   <u>Petition Date</u>.   December 17, 2018, the date on which the Debtor's Chapter 11 Petition was filed and the Order for Relief was entered by the Court, which commenced this Chapter 11 case.

1.74.   <u>Plan or Plan of Reorganization</u>. This Chapter 11 Plan of Reorganization, either in its present form or as it may hereafter be corrected, amended, supplemented, restated, or modified from time to time.

1.75.   <u>Plan Distributions</u>.  The quarterly payments to be made by the Reorganized Debtor to certain holders of Allowed Creditor Claims over the course of the Plan Period, as described in this Plan, commencing with the First Distribution to be made on the Effective Date.

1.76.   <u>Plan Period</u>.    The period of time over which the Reorganized Debtor shall complete all Distributions to holders of Allowed Creditor Claims, which shall be five (5) years from the date of the order of relief in this case, December 17, 2018.

1.77.   <u>Plan Proponent</u>.  The Debtor, Valentia Global, LLC.  Upon confirmation of this Plan, the Valentia Sale will be deemed consummated and one hundred percent (100%) of the Reorganized Debtor will be owned by Bechna.

1.78.   <u>Priority Claim</u>. Any Claim, other than an Administrative Expense Claim, a Priority Tax Claim or a Priority Wage Claim, to the extent entitled to priority in payment under 11 U.S.C. § 507(a).

1.79.   <u>Priority Creditor</u>.  Any Creditor that is the holder of a Priority Claim other than a Priority Tax Claim or a Priority Wage Claim.

1.80.   <u>Priority Tax Claim</u>. Any claim to the extent entitled to priority in payment under 11 U.S.C. §§ 507(a)(8).

1.81.   <u>Priority Tax Creditor</u>.  Any Creditor that is the holder of a Priority Tax Claim.

1.82.   <u>Priority Wage Claim</u>. Any claim to the extent entitled to priority in payment under 11 U.S.C. §§ 507(a)(4).

1.83.   <u>Priority Wage Creditor</u>. Any Creditor that is the holder of a Priority Wage Claim.

1.84.   <u>Professional Compensation</u>. Any amounts that the Bankruptcy Court allows pursuant to § 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by the Debtor, and any amounts the Bankruptcy Court allows pursuant to §§ 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

1.85.  <u>Purchaser</u>.  Bechna, LLC, a Florida Limited Liability Company owned by Benjamin J. Navarro, who is also a Manager Member.

1.86.  <u>Purchase Price</u>.  The consideration which Bechna will pay to purchase the Valentia Assets and the Valentia Membership Interests, which will be comprised of: (i) the cash required to pay the First Distribution to all Creditors holding Allowed Claims on the Effective Date as described in this Plan (which funds are in addition to substantial cash infusions which Bechna has made to the Debtor during the Chapter 11 Case to assist Debtor with post-petition operating expenses); together with (ii) the funds necessary to pay all future Plan Distributions to be made over the life of this Plan to Creditors holding Allowed Claims, if and to the extent that the Reorganized Debtor at any time has insufficient funds to make future Plan Distributions.

1.87.  <u>Rejected Contract</u>. Any unexpired lease or executory contract or purported lease or executory contract not assumed in the Plan.

1.88.  <u>Reorganized Debtor</u>.  The post-Confirmation Debtor who will have all rights and liabilities as set forth by this Plan.

1.89.  <u>Restaurant</u>.   The Debtor's restaurant, Valentia Mediterranean Cuisine, located in leased premises at 1450 Brickell Avenue, Suite 110, Miami, Florida 33131.

1.90.  <u>Retained Action</u>. Any claim, cause of action, right of action, suit or proceeding, whether in law or in equity, whether known or unknown, which the Debtor or the Estate may hold against any Person, including Madison Acquisitions, Inc. and Merchant Advance, LLC, and *inter alia*: (i) any and all claims that arose before, on or after the Petition Date; (ii) claims and causes of action against any Persons for failure to pay for products or services provided or rendered by the Debtor; (iii) claims and causes of action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, including without limitation, claim overpayments and tax refunds; and (iv) all causes of action that are Avoidance Actions.

1.91.  <u>Schedules</u>. The Schedules of Assets and Liabilities the Debtor filed in the Bankruptcy Case, as they may be amended from time to time in accordance with Bankruptcy Rule 1009.

1.92.  <u>Secured Claim</u>. Any Claim against the Debtor to the extent secured by a Lien on any property of the Debtor on the Petition Date which has not been avoided or disallowed by the Bankruptcy Court, to the extent of the value of said property as provided in § 506(a) of the Bankruptcy Code.

1.93.  <u>Secured Creditor</u>. Any creditor that is the holder of a Secured Claim.

1.94.  <u>Subordinated Claim</u>.  Any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of § 510 of the Bankruptcy Code or other applicable law.

1.95.   <u>Substantial Consummation</u>. Substantial Consummation shall encompass the definition provided in § 1101(2) of the Bankruptcy Code and will be deemed to have occurred upon the Effective Date.

1.96.   <u>Tax Creditor</u>.  Any Creditor that holds a tax claim.

1.97.   <u>Time</u>. Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Florida, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

1.98.   <u>Transaction</u>.  The Bechna Purchase Transaction described in this Plan, which will provide the source of funds from which all Distributions will be made.

1.99.   <u>Ultimately Allowed Claim</u>. Any Contested Claim that subsequently becomes an Allowed Claim.

1.100.  <u>Unimpaired</u> Claim. Any class of Creditors whose Claims are not impaired under the Plan in accordance with § 1124 of the Bankruptcy Code.

1.101.  <u>Unsecured Claim</u>. Any Claim other than a Secured Claim, a Priority Tax Claim, a Priority Wage Claim, or an Administrative Expense Claim.

1.102.  <u>Unsecured Creditor</u>. Any creditor that is the holder of an Unsecured Claim.

1.103.  <u>Unsecured Lender Claim</u>. Any Claim other than a Secured Claim, a Priority Claim, a Priority Tax Claim, an Unsecured Vendor Claim or an Administrative Expense Claim.

1.104.  <u>Unsecured Lender Creditor</u>. Any creditor that is the holder of an Unsecured Lender Claim.

1.105.  <u>Unsecured Vendor Claim</u>. Any Claim other than a Secured Claim, a Priority Claim, a Priority Tax Claim, an Unsecured Lender Claim or an Administrative Expense Claim.

1.106.  <u>Unsecured Vendor Creditor</u>. Any creditor that is the holder of an Unsecured Claim.

1.107.  <u>Valentia Assets</u>.  One hundred percent (100%) of the assets of the Debtor, including but not limited to furniture, fixtures, equipment, inventory, liquor license, receivables, trade name, good will, customer lists  and intangible assets.

1.108.  <u>Valentia Membership Interests</u>.  One hundred percent (100%) of the membership interests in the Debtor, a Florida Limited Liability Company, which currently are wholly owned by Ivan Marzal.  Upon confirmation of this Chapter 11 Plan, one hundred percent (100%) of the membership interests in the Reorganized Debtor will be wholly owned by Bechna, LLC.

1.109. <u>Valentia Sale</u>.  The sale of the Valentia Membership Interests and Valentia Assets to Bechna as described in this Plan.  The Valentia Sale is also called the Bechna Purchase Transaction and is described in more detail as defined above.

# ARTICLE III
# BACKGROUND OF THE DEBTOR'S BUSINESS

### 3.1.    Description of the Debtor

Valentia is a small business debtor as defined in 11 U.S.C. § 101(51D), with its principal place of business in Miami-Dade County, Florida.  It was formed in October 2015, and its primary asset is Valentia Mediterranean Cuisine, a restaurant located at 1450 Brickell Avenue, #110, Miami, Florida 33131 (the "Restaurant"), which Debtor purchased on April 18, 2016.  The Debtor's owner and sole member is Ivan Marzal ("Marzal").

In April 2016, the Debtor purchased from Lanamar all of the assets of Lanamar's then-existing restaurant, Perfecto, for $1,125,000.00 pursuant to an Asset Purchase Agreement ("Lanamar APA").  The assets purchased by the Debtor included the hard assets as well as Lanamar's liquor license and the lease of the premises on which Perfecto was located, subject to approval of the assignment by the Landlord.  In conjunction with the purchase, the Debtor paid Lanamar cash totaling $125,000.00, and in accordance with the Lanamar APA, the Debtor executed a promissory note for $1,000,000.00 in favor of Lanamar for the remainder of the purchase price.

After the purchase closed in April 2016, the Debtor made substantial renovations to the Restaurant, most significantly the kitchen and therefore the Restaurant did not open for business until October 2016 when the renovations were completed.  The Debtor's monthly payments of $25,000.00 to Lanamar commenced when the Restaurant opened. To fund the down payment and the substantial renovation costs, the Debtor obtained unsecured loans from several parties, but from the beginning the Debtor had insufficient start-up capital for both the substantial renovation expenses that were undertaken prior to opening the Restaurant and the up-front costs necessary to bring the new Restaurant into operation.  Even after it opened, the Restaurant was never profitable enough to meet all of its monthly obligations, working capital was always in short supply, and the Debtor's financial difficulties began soon after opening.  Although the payments to Lanamar were later reduced, the Debtor still had difficulty making those payments from the income being generated. Over 2017 and 2018, the Debtor continued to borrow money, mainly through unsecured personal loans from various parties, including friends and acquaintances of Marzal, in order to pay operating expenses.

As the lack of working capital caused Debtor's financial difficulties to mount, in June 2018 the Debtor entered into an Agreement for the Purchase and Sale of Future Receipts ("Future Receipts Agreement") with Merchant Advance, LLC in New York to obtain working capital. Pursuant to the Future Receipts Agreement, Merchant Advance paid the Debtor $95,000.00 ($100,000.00 minus a "Risk Assessment Fee" of $1,000.00 and an "Origination Fee" of $4,000.00) against the Debtor's future receipts of $139,000.00, to be repaid through an automatic daily deduction of ten percent (10%) of all credit, debit and charge card purchases from Debtor's operating bank account, then located at Chase Bank.

At the same time the Future Receipts Agreement was signed, Merchant Advance required Marzal to execute an Affidavit of Confession of Judgment in which Marzal was required to authorize entry of a judgment against the Debtor for $139,000.00 less any payments made, plus interest, costs and legal fees to be calculated at twenty-five percent (25%) of the total amount due. The Future Receipts Agreement itself is silent as to this 25% attorney's fee obligation. Thus when Debtor's operating bank account was frozen a few months later by the Florida Department of Revenue as a result of unpaid sales taxes and the automatic deductions to Merchant Advance ceased, Merchant Advance immediately declared a default and sought a consent judgment against the Debtor in New York for $125,248.28, which was the total future receipts of $139,000.00, less approximately $39,000.00 that the Debtor already had repaid, plus costs and attorney's fees of $25,000.00 that allegedly has been "confessed" by the Debtor.

### a. Debtor's Secured Creditors

As of the Petition Date, the Debtor had two secured creditors, Lanamar and Merchant Advance, although the Merchant Advance claim was listed as disputed by the Debtor. Lanamar's loan to the Debtor to finance the purchase of the Restaurant was secured by a UCC-1 Financing Statement filed on March 1, 2017, in which Lanamar asserted that it had a lien on the Debtor's furniture, fixtures, original equipment and inventory, new equipment purchased when the kitchen was renovated, the Alcohol Beverage Retailer License ("Liquor License"), other licenses and permits, the "shares/stocks" in the Debtor, and the assigned Lease. Lanamar does not have a lien on the Debtor's receipts or deposit accounts.

According to its Complaint filed against the Debtor in Miami-Dade County Circuit Court on or about October 15, 2018, Lanamar claims it is owed $897,000.00 by the Debtor as a result of payment defaults by the Debtor since February 2018. While the UCC-1 Financing Statement filed by Lanamar was adequate to perfect its security interest in the Debtor's hard assets, it did not perfect Lanamar's lien on the Liquor License, which must be filed under specific guidelines with the Florida Division of Alcohol Beverages and Tobacco ("DABT"). Although the Debtor believes that other issues exist with respect to Lanamar's lien on the Debtor's membership interests, this Plan provides for the agreed[1] treatment and resolution of the Lanamar Claim, and any such issues would be encompassed within that resolution.

Debtor's other purported secured creditor as of the Petition Date was Merchant Advance, but while both Lanamar and Merchant Advance assert a lien on the Restaurant's furniture, fixtures, equipment and other physical assets, only Merchant Advance purported to have a lien on the Debtor's cash collateral. Merchant Advance filed a UCC-1 Financing Statement on October 4, 2018 reflecting a lien, *inter alia*, on Debtor's deposit accounts, contract rights, instruments, payments and general intangibles in addition to Debtor's inventory, fixtures and equipment. However, this lien was filed within ninety (90) days prior to the Petition Date and therefore falls

---

[1] As of this writing, the agreement between Lanamar and Bechna regarding the treatment of the Lanamar Claim has not been finalized, but the Debtor believes there is consensus on the most essential issues and that the agreement will finalized shortly. In the event that there are material changes to the agreement, this Plan will be amended accordingly.

within the preference period under 11 U.S.C. §547.[2]  On October 24, 2018, the Supreme Court in Erie County, New York entered a Judgment by Confession for $125,248.28 against the Debtor and in favor of Merchant Advance based on the Affidavit that Marzal had been required to execute when the Future Receipts Agreement was signed.[3]

### b.  Debtor's Priority Creditors

As reflected in its Schedules, as of the Petition Date the Debtor had two types of Priority Creditors: Priority Tax Creditors and Priority Wage Creditors.  The Debtor's primary tax obligation is to the Internal Revenue Service ("IRS") for past due payroll withholding taxes.  Although the exact amount due to the IRS has not yet been assessed, in its Schedules the Debtor estimated this tax obligation at approximately $322,122.

Unpaid sales taxes owed to the Florida Department of Revenue as of the Petition Date, totaling approximately $30,557, were paid on Debtor's behalf post-petition by Bechna in order to facilitate the Department of Revenue's prompt transfer of the liquor license from Lanamar to the Debtor following proceedings before the Court in connection with that license.  Additionally, approximately $6,000 is owed to Miami-Dade County for intangible and/or tourist taxes.

The Debtor also has two Priority Wage Creditors who are owed unpaid wages earned during the 180 day period prior to the Petition Date, totaling approximately $8,830.

### c.  Debtor's Unsecured Creditors

Debtor's Unsecured Creditors are comprised of vendors, trade creditors, utilities and creditors who made unsecured loans to the Debtor for operating or other expenses.  This Plan divides the Unsecured Creditors into two classes:  Convenience Claims of $2,500 or less, and general Unsecured Claims in excess of $2,500.  As of the Petition Date, the Debtor's estimated total obligation to all Unsecured Creditors is approximately $1,045,967.

### 3.2.    Significant Chapter 11 Events

Early in the case the Debtor sought the Court's authority to use cash collateral, which was not opposed by Merchant Advance, the only creditor which arguably has a lien on the Debtor's cash collateral.  The Debtor was granted authority to use cash collateral on an interim basis on January 18, 2019. That interim authority has been continued several times and a final cash collateral hearing is scheduled for July 16, 2019 at 2:00 p.m.

Also early in the case, the Debtor was required to file an emergency motion to enforce the automatic stay against Lanamar and to compel the transfer of estate property, which resulted from Lanamar's refusal to execute documents necessary to transfer Lanamar's liquor license to the

---

[2]        The Debtor will be filing an avoidance action and claim objection against Merchant Advance prior to the confirmation hearing.  This Plan does not provide for any Distributions to Merchant Advance unless and until that action has been resolved and the Court determines that amounts are due to Merchant Advance.

[3]        The Debtor disputes the amount of the Merchant Advance Judgment by Confession, particularly with respect to the amount of the "confessed" attorneys' fees.

Debtor, which had not been done at the time of the Lanamar APA in April 2016. After two emergency hearings, the Court found a violation of the automatic stay and ordered Lanamar to execute the necessary documents to allow the Debtor to obtain the license transfer by the Florida Division of Alcohol Beverages and Tobacco. In conjunction therewith, the Court granted Lanamar a post-petition adequate protection lien on the liquor license.

### 3.3. Retention of Counsel and Other Chapter 11 Matters

#### a. Debtor's Professionals

The Debtor has retained professionals to represent it in this Chapter 11 Case, including: (i) the Debtor's Chapter 11 counsel, Aaronson Schantz Beiley P.A., whose retention was approved by Order dated January 14, 2019 [ECF 23]; (ii) the Debtor's accountant, VMBG Accounting, whose retention was approved by Order dated April 22, 2019 [ECF 118]; and (iii) the Debtor's special counsel to handle the liquor license and related regulatory issues, Samuel A. Rubert, P.A., whose retention also was approved by Order dated April 22, 2019 [ECF 119].

#### b. Compromise with Lanamar

Since April 2019, Bechna and the Debtor have been negotiating with Lanamar in an effort to resolve Lanamar's Secured Claim. The proposed treatment of Lanamar as set forth in this Plan reflects terms to which the parties have agreed over the course of those negotiations,[4] including the total amount to be paid and the time period over which the payments are to be made, but as of the filing of this Plan that agreement has not been finalized or executed. Once finalized, the Debtor will amend the Plan if necessary to reflect the final terms of that agreement. This Plan also provides for the treatment of Lanamar's claim in the event the agreement is not finalized.

### ARTICLE IV
### PROPOSED SALE OF THE DEBTOR

This Plan provides for, and is based on, a proposed sale of the Debtor, including one hundred percent (100%) of the membership interests in the Debtor and all of the Debtor's tangible and intangible assets, to Bechna. Upon Plan confirmation, Bechna will become the owner of the Reorganized Debtor, free and clear of all liens, claims, interests and encumbrances except as contained in this Plan. For the consideration to be paid, Bechna will provide the cash required to pay all Distribution amounts due on the Effective Date as described in this Plan (which funds are in addition to substantial cash infusions which Bechna has made to the Debtor during the Chapter 11 Case to assist Debtor with post-petition operating expenses), as well as the funds necessary to pay all future Plan Distributions to be made over the life of this Plan to Creditors holding Allowed Claims through the Reorganized Debtor.

### ARTICLE V
### SUMMARY OF BANKRUPTCY AND CHAPTER 11 PROCEDURE

---

[4]       One of the remaining issues in dispute is the month in which accrual of Bechna's payments to Lanamar would begin, April or June. The payment schedule attached to this Plan reflects accrued payments commencing in June, but to date that term has not been agreed to by Lanamar.

### 5.1    Property of the Estate

The commencement of a Chapter 11 Case creates an estate comprising all the legal and equitable interests of the Debtor in property as of the date the petition is filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "Debtor-in-Possession" unless the Bankruptcy Court orders the appointment of a trustee or custodian. No trustee or custodian has been appointed in this case.

### 5.2    Automatic Stay

Pursuant to Section 362 of the Bankruptcy Code, the filing of a Chapter 11 petition operates as an automatic stay applicable to all entities of various actions, including actions to collect pre-petition claims from the Debtor or otherwise interfere with its property or business, unless otherwise ordered or permitted by the Bankruptcy Court.

### 5.3    Plan of Reorganization

This Plan sets forth the terms of the Debtor's financial reorganization. Section 1121 of the Bankruptcy Code provides that only a debtor may file a plan within a certain period after filing a bankruptcy petition, known as the exclusivity period. This Plan has been filed before the expiration of such exclusivity period.

### 5.4    Disclosure Statement

An acceptance or rejection of a Plan may not be solicited after the commencement of a Chapter 11 case from the holder of a claim or equity interest unless, at the time of or before such solicitation, there is transmitted to such holder, the Plan and a written Disclosure Statement approved by the Court as "containing adequate information," after notice and a hearing on the contents therein. "Adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records that would enable a hypothetical, reasonable investor typical of holders of claims or interests of the relevant Class, to make an informed judgment about the Plan. This Plan contains both the Plan and Disclosure statement of the Debtor.

### 5.5    Acceptance and Confirmation of Plan

As a condition of confirmation of the Plan, the Bankruptcy Code requires the Court determine that: (i) the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and (ii) the Debtor's disclosures concerning the Plan have been adequate and have included information concerning all payments made or promises by the Debtor in connection with the Plan and the Chapter 11 Case.

Section 1129 of the Bankruptcy Code, which sets forth the requirements that must be satisfied in order for the Plan to be confirmed, lists the following requirements for the approval of any plan of reorganization, to the extent they are applicable in this particular case:

1.    A plan must comply with the applicable provisions of the Bankruptcy Code, including, *inter alia*, § 1123(a)(4), which provides that a plan must "provide the

16

same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." Such anti-discrimination provision applies to contingent claims (such as guaranty claims) as well as all other claims and interests.

2.      The proponent of a plan must comply with the applicable provisions of the Bankruptcy Code.

3.      A plan must be proposed in good faith and not by any means forbidden by law.

4.      Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under a plan, for services or for costs and expenses in or in connection with the case, or in connection with such plan and incident to the case, must be approved by, or be subject to the approval of, the court as reasonable.

5.      (A)(i) The proponent of a plan must disclose the identity and affiliations of any individual proposed to serve, after confirmation of such plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under such plan; and,

        (ii) The appointment to, or continuance in, such officer or individual, must be consistent with the interests of creditors and equity security holders and with public policy; and

        (B) The proponent of a plan must disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation of each insider.

6.      Any governmental regulatory commission with jurisdiction, after confirmation of a plan, over the rates of the debtor must approve any rate change provided for in such plan, or such rate change is expressly conditioned on such approval. The Plan proposes no such change, nor does the Debtor have rates over which any governmental authority exercises jurisdiction.

7.      Each holder of a claim or interest in an impaired class of claims or interest must have accepted the plan or must receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

8.      With respect to each class of claims or interest, such class must accept the plan or not be impaired under the plan (subject to the cramdown provision.)

9.      Except to the extent that the Holder of a particular claim has agreed to a different treatment of such claim, a plan must provide that:

17

(A) with respect to an administrative claim and certain claims in an involuntary case, on the effective date of the plan, the Holder of the claim will receive on account of such claim cash equal to the allowed amount of the claim;

(B) with respect to a class of priority wage, employee benefit, consumer deposit and certain other claims described in 11 U.S.C. § 507(a)(3)-(6), each holder of a claim of such class will receive:

    (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim;

    (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim.

(C) with respect to a priority tax claim of a kind specified in 11 U.S.C. § 507(a)(8), the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the date of assessment of such claim of a value, as of the effective date of the plan equal to the allowed amount of such claim.

10. If a class of claims is impaired under a plan, at least one class of claims that is impaired under such plan must have accepted the plan, determined without including any acceptance of the plan by any insider.

11. Confirmation of a plan must not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan. This is the so-called "feasibility" requirement.

12. All fees payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on confirmation of the plan, must have been paid or the plan must provide for the payment of all such fees on the effective date of the plan.

13. A plan must provide for the continuation after its effective date of payment of all retiree benefits, as that term is defined in 11 U.S.C. § 1114, at the level established pursuant to 11 U.S.C. § 1114(e)(1)(B) or (g), at any time prior to confirmation of such plan, for the duration of the period the debtor has obligated itself to provide such benefits. The Debtor has no such benefits.

**5.6    Voting**

### 5.6.1.  Who May Vote or Object?

A Creditor or equity holder has a right to vote for or against the Plan only if that Creditor or equity holder has a Claim or equity interest that is both: (a) allowed (or allowed for voting purposes); and (b) impaired. Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. Section 1126(g) of the Code provides that a

Class is deemed not to have accepted a plan if such Class will not receive or retain any property under the plan.

### 5.6.2. What Is an Allowed Claim or an Allowed Equity Interest?

Only the holder of an Allowed Claim or an Allowed equity interest has the right to vote on the Plan. Generally, a Claim or equity interest is allowed if either: (a) the Debtor has scheduled the Claim or equity interest on its Schedules, unless the Claim has been scheduled as disputed, contingent, or unliquidated; or (b) the Creditor has filed a Proof of Claim or Equity Interest, and no objection has been filed to such Proof of Claim or Equity Interest. When a Claim or equity interest is not allowed, the holder of the Claim or equity interest cannot vote unless, after notice and hearing, the Court either overrules the objection or allows the Claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Bankruptcy Rules.

In this case, the deadline for filing a proof of claim for non-governmental entities expired on April 25, 2019. The deadline for governmental agencies to file a proof of claim is June 17, 2019. The Claims Objection Date will be one (1) year after the Effective Date.

### 5.6.3. What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an Allowed Claim or equity interest has the right to vote only if it is in a Class that is "impaired" under the Plan. As provided in § 1124 of the Bankruptcy Code, a Class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class.

### 5.6.4. Who is NOT Entitled to Vote?

The holders of the following types of Claims and/or equity interests are not entitled to vote to accept or reject the Plan:

- Holders of any Claim or equity interest that has been disallowed by an order of the Court;

- Holders of any other Claim or equity interest that are not Allowed Claims or Allowed "equity interest" (as defined in the Plan), unless they have been "allowed" for voting purposes;

- Holders of any Claim or equity interest in unimpaired Classes;

- Holders of Claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code;

- Holders of any Claim or equity interest in Classes that do not receive or retain any value under the Plan; and,

- Administrative Creditors.

19

Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan and to the adequacy of the Disclosure Statement.

### 5.6.5. Who Can Vote in More Than One Class?

Any Creditor whose Claim has been allowed in part as a Secured Claim and in part as an Unsecured Claim, or who otherwise holds Claims in multiple classes, is entitled to accept or reject the Plan in each capacity and should cast one ballot for each Claim.

### 5.6.6. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless: (1) all impaired Classes have voted to accept the Plan, or (2) at least one impaired class of Creditors has accepted the Plan and, the Plan does not discriminate unfairly and is fair and reasonable in accordance with Section 1129(b) of the Bankruptcy Code. The Court is obligated to consider certain criteria in respect to secured creditors, unsecured creditors, and equity interest holders when it makes a determination under Section 1129(b).

### 5.6.7. Votes Necessary for a Class to Accept the Plan?

A class of Claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the Allowed Claims in the class who vote, cast their votes to accept the Plan; and (2) the holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims in the class who vote, cast their votes to accept the Plan. A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the Allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 5.6.8. Impairment

A class of Claims or equity interests is "impaired" unless (1) the Plan leaves unaltered the legal, equitable, or contractual rights attaching to the Claims or equity interest; or (2) the Plan cures a default, reinstates the maturity of the debt, and compensates for any reliance upon the default.

### 5.6.9. Confirmation Standards

#### A. Generally

The Plan Proponent must meet all applicable requirements of Section 1129(a) of the Bankruptcy Code. These requirements include, among other things, that: (a) the Plan complies with applicable provisions of Title 11, United States Code and other applicable law; (b) the Plan is proposed in good faith; (c) at least one impaired Class of Claims accepts the Plan (without counting votes of insiders); (d) the Plan distributes to each Creditor and equity interest Holder at least as much as the creditor or equity holder would receive in a chapter 7 liquidation case, unless the Creditor or equity interest Holder votes to accept the Plan; and, (e) the Plan is feasible. These requirements are not the only requirements listed in Section 1129 of the Bankruptcy Code, and they are not the only requirements for Confirmation

#### B. Cramdown

The Bankruptcy Court may also confirm the Plan even though fewer than all the classes of impaired claims and interests have accepted the Plan. If the Plan is to be confirmed despite the rejection of a class of impaired claims or interests, then the proponent of the Plan must show, among other things, that the Plan does not discriminate unfairly and that the Plan is fair and equitable with respect to each impaired class of claims or interest that has not accepted the Plan. In determining under Section 1129(b) whether the Plan does not discriminate unfairly and that the Plan is fair and equitable with respect to each impaired class of claims or interests, the Court is obligated to consider certain criteria in respect to secured creditors, unsecured creditors, and equity interest holders.

### C.  Liquidation Analysis

To confirm the Plan, the Court must find that all Creditors and equity interest Holders who do not accept the Plan will receive at least as much under the Plan as such Creditors and/or equity interest Holders would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

### D.  Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by a liquidation, or the need for further financial reorganization of the Debtor (or any successor to the Debtor), unless such liquidation or reorganization is proposed in the Plan.

**ARTICLE VI**
**ADMINISTRATIVE CLAIMS AND OPERATING EXPENSES**

**6.1.  Administrative Claims, Treatment and Payment.**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims against the Debtor will not be classified for purposes of voting or receiving distributions under the Plan. All such Claims will be treated separately as unclassified Claims and obligations on the terms set forth in this Article VI.

**6.2.  Administrative Claimants.**

6.2.1.  <u>Ongoing Operating Costs of Business.</u> All ordinary course operating costs and expenses of Valentia which are outstanding on the Effective Date, including any actual and necessary costs and expenses of operating the Debtor's business, any business-related indebtedness or obligation incurred or assumed by the Debtor during this Chapter 11 Case and all post-petition taxes, shall continue to be paid in the ordinary course.

6.2.2.  <u>Professional Fees – ASBPA</u>.  The Debtor's Chapter 11 counsel, Aaronson Schantz Beiley P.A. ("ASBPA"), was retained and approved by the Court *nunc pro tunc* as of the Petition Date [ECF 62].  At this time, the Debtor does not know the total amount of attorneys' fees and costs that ultimately will be sought by ASBPA.  Total fees and costs for this case may be approximately $250,000.00, although this is solely an estimate.  The total fees in this case

will depend upon the issues that may be presented and the legal work involved in resolving these issues, including resolution of the anticipated avoidance action and claim objection against Merchant Advance. ASBPA was paid an initial retainer of $50,000.00 on Debtor's behalf by Benjamin Navarro, the principal of Bechna.   Prior to the Confirmation Hearing, ASBPA will file an Application for Fees and Reimbursement of Expenses which will detail the professional services rendered and costs incurred, for review by the Court at Confirmation Hearing.  The Court will rule upon the Fee Application and award fees based upon the reasonableness of the Application and prevailing case law.

Additionally, in the event that adversary litigation against Merchant Advance, LLC continues after the Confirmation Hearing, it may be necessary for ASBPA to file one or more Post-Confirmation Applications for Fees and Reimbursement of Expenses for professional services rendered and costs incurred in connection with the Merchant Advance adversary litigation.

6.2.3.   <u>Professional Fees – Rubert</u>.  The Debtor's special counsel, Samuel A. Rubert, Esq. and Samuel A. Rubert, P.A. ("Rubert") also was retained and approved by the Court *nunc pro tunc* as of the Petition Date [ECF 119]. Rubert was retained as special counsel to represent the Debtor in connection with all liquor licensing issues, including the transfer the liquor license from Lanamar Group, LLC and all related compliance and licensing matters associated with the transfer.  At this time, the services provided by Rubert to the Debtor essentially have been completed, and the estimated amount of attorneys' fees and costs that will be sought by Rubert are $4,300.00 for services rendered as special counsel.  Prior to the Confirmation Hearing, Rubert will file an Application for Fees and Reimbursement of Expenses which will detail the professional services rendered and costs incurred for review by the Court at Confirmation Hearing.  The Court will rule upon the Fee Application and award fees based upon the reasonableness of the Application and prevailing case law.

6.2.4.   <u>Professional Fees – VMBG</u>.  The Debtor's Chapter 11 accountant, Caridad Vasallo, CPA and the accounting firm of VMBG Accounting ("VMBG") was retained and approved by the Court *nunc pro tunc* to March 15, 2019 [ECF 118] to provide accounting, tax and related financial services in this Chapter 11 case, including preparation of Debtor's payroll tax returns and submission of Debtor's Chapter 11 monthly operating reports.  At this time, VMBG's professional fees are approximately $7,800.00 but the Debtor does not know the total amount of professional fees and costs that ultimately will be sought by VMBG.  Total fees and costs for this case may be approximately $10,000, although this is solely an estimate.  The total fees in this case will depend in part on the anticipated work involved in negotiating the Debtor's payroll tax obligation with the Internal Revenue Service.  Prior to the Confirmation Hearing, VMBG will file an Application for Fees and Reimbursement of Expenses which will detail the professional services rendered and costs incurred for review by the Court at Confirmation Hearing.  The Court will

rule upon the Fee Application and award fees based upon the reasonableness of the Application and prevailing case law.

VMBG may be required to file Post-Confirmation Applications for Fees and Reimbursement of Expenses for professional services rendered and costs incurred in connection with negotiating the Debtor's payroll tax obligation with the Internal Revenue Service.

6.2.5. <u>United States Trustee</u>. The Debtor may owe fees to the Office of the United States Trustee. Fees owed to the Office of the United States Trustee are determined by statute (28 U.S.C. § 1930) and are based upon disbursements made by the Debtor.

**6.3.  Treatment of Administrative Claims**

6.3.1. <u>Professional Fees</u>. Except to the extent that the Holder of Claims for Professional Fees agrees to a different treatment, any Claims for Professional Fees are entitled to be paid on the Effective Date of the Plan, cash equal to the approved amount of such claims.

6.3.2. <u>United States Trustee</u>. The Debtor shall pay the U.S. Trustee in full on the Effective Date all sums required pursuant to 28 U.S.C.  1930(a)(6).  The Debtor will be requesting that the Court close this case immediately after the Effective Date, which will curtail further U.S. Trustee fees.

<u>**ARTICLE VII**</u>
<u>**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**</u>

**7.1 Classification and Impairment of Claims.**

The categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtor for all purposes of this Plan and indicate whether such claims are impaired under the Plan.  A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any portion of such Claim or Interest qualifies within the description of such different Class.  The treatment with respect to each Class of Claims and Interests provided for in Article VII shall be in full and complete satisfaction, release and discharge of such Claims and Interests, except as otherwise provided in the Plan or the Confirmation Order. Claims and Interests are divided into the classes described below.

**7.2.  Impaired and Unimpaired Classes.**

There are Impaired Classes under the Plan, which will be paid in accordance with the treatment below.  All non-Impaired Classes will be paid in full on the Effective Date, or they will be paid as permitted by the Code.

**7.3. Treatment.**

The following sets forth the specific treatment of, and consideration to be received by, holders of Allowed Claims or Allowed Interests:

| Class | Description | Amount | Treatment | Impaired |
|-------|-------------|--------|-----------|----------|
| Class 1 | Allowed Secured Claim of Lanamar Group, LLC | $550,000.00 | Class 1, Lanamar Group, LLC, has an Allowed Secured Claim against the Debtor totaling $550,000.00 pursuant to a Resolution Agreement between Lanamar and Bechna, with Debtor's consent, which fully resolves the Lanamar Claim, as authorized by 11 U.S.C. §1123(b)(5). The Resolution Agreement has not been finalized as of this writing.  If the Parties are unable to finalize the Resolution Agreement, Class 1 will be paid as set forth in Article V. Pursuant to the Resolution Agreement, Lanamar will receive nineteen (19) increasing monthly payments and will waive its Unsecured Claim against the Debtor for the remaining balance of the Lanamar Claim.<br><br>Class 1 will be paid in accordance with the payment schedule attached as Exhibit "A" to this Plan, with all payments accruing from June 2019 through Plan confirmation to be paid to Lanamar on the Plan Effective Date.  Upon completion of the payments to Class 1, the Class 1 Allowed Claim will be deemed fully satisfied.<br><br>The Debtor will file an amended Exhibit "A" and/or Plan if the terms reflected herein are materially different in the final Resolution Agreement. | Yes |
| Class 2 | Allowed Secured Claim of Merchant Advance, LLC | $0.00 | Class 2, Merchant Advance, LLC, has a disputed claim of $125,000.00 which was purportedly secured by a lien recorded against the Debtor within the 90-day preference period. | Yes |

| | | | Debtor disputed the Merchant Advance claim in its Schedules and Merchant Advance did not timely file a Proof of Claim. The Debtor intends to file an adversary complaint to avoid the Merchant Advance lien and object to the Merchant Advance claim.<br><br>While the Debtor believes that this is an Unsecured Claim, if the Class 2 is deemed to be a Secured Claim,such claim will be paid in full on the Effective Date. The Allowed Unsecured Claim of Class 2, if so determined, will be paid as part of Class 7 below. | |
|---|---|---|---|---|
| Class 3a | Allowed Priority Claim of Internal Revenue Service | $322,121.99 | Class 3a, the Internal Revenue Service ("IRS"), has an Allowed Priority Claim against the Debtor for unpaid payroll taxes, the amount of which the Debtor estimated in its Schedules at $322,121.99. The actual amount of the Allowed Priority Claim of Class 3a will be later determined through assessments by Class 3a and/or negotiations between the Debtor and Class 3a. The Debtor will pay the Allowed Priority Claim of Class 3a in equal quarterly Plan Distributions over the Plan Period, which is five (5) years from December 17, 2018, the date of the order of relief in this case.<br><br>Class 3a is unimpaired because this treatment is consistent with 11 U.S.C. § 1129(a)(9)(C). | No |
| Class 3b | Allowed Priority Claim of Florida Department of Revenue | $0.00 | Class 3b, the Florida Department of Revenue ("FDOR") had a pre-petition priority claim against the Debtor for sales taxes, which Debtor estimated in its Schedules to be $40,000.00. However, in | No |

| | | | conjunction with liquor license transfer issues that were before the Bankruptcy Court early in the Chapter 11 case and in order to facilitate the immediate transfer, the pre-petition sales taxes owed by the Debtor to FDOR, which totaled $30,556.81, were paid in full by Bechna, the purchaser of the Debtor as described in this Plan. Accordingly, no Distributions to Class 3b are provided by this Plan. | |
| Class 3c | Allowed Priority Claim of Miami-Dade County Tax Collector | $6,000.00 | Class 3c, Miami-Dade County Tax Collector, has an Allowed Priority Claim against the Debtor for unpaid intangible and/or tourist taxes, the amount of which the Debtor estimated in its Schedules at $6,000.00.  The actual amount of the Allowed Priority Claim of Class 3c will be later determined through assessments by Class 3c and/or negotiations between the Debtor and Class 3c.  The Debtor will pay the Allowed Priority Claim of Class 3c in equal quarterly Plan Distributions over the Plan Period, which is five (5) years from December 17, 2018, the date of the order of relief in this case.  Class 1c is unimpaired because this treatment is consistent with 11 U.S.C. § 1129(a)(9)(C).  However, in the event that the Allowed Priority Claim of Class 3c is determined to be $5,000.00 or less, then Class 3c may elect to be treated in the same manner as a Class 6 Allowed Convenience Claim. | No |
| Class 3d | Allowed Priority Claim of City of | $0.00 | Class 3d, the City of Miami, was scheduled by Debtor for an | No. |

| | Miami | | "unknown" amount owed as "surtax." Since filing its Schedules, the Debtor has been unable to ascertain any amounts owed to Class 3d for surtaxes. Accordingly, no Distributions to Class 3d are provided by this Plan. In the event that Class 3d files a timely proof of claim for amounts owed by Debtor, then the Debtor will pay the Allowed Priority Claim of Class 3d in equal quarterly Plan Distributions over the Plan Period, which is five (5) years from December 17, 2018, the date of the order of relief in this case.<br><br>Class 1c is unimpaired because this treatment is consistent with 11 U.S.C. § 1129(a)(9)(C).<br><br>However, in the event that the Allowed Priority Claim of Class 3d is determined to be $5,000.00 or less, then Class 3d may elect to be treated in the same manner as a Class 6 Allowed Convenience Claim. | |
| Class 4 | Allowed Priority Wage Claims | $8,830.19 | Class 4, Wage Claimants Abel Leseaille and Luis Navarro, have Allowed Priority Claims against the Debtor, pursuant to 11 U.S.C. §507(a)(4), for pre-petition wages totaling $8,830.19 ($4,879.74 and $3,950.45 respectively).<br><br>Each of the Allowed Priority Wage Claims of Class 4 will be paid in full on the Plan Effective Date. | No |
| Class 5 | Allowed Unsecured Claim of Lessor | $64,084.00 | Class 5, 1450 Brickell, LLC, is the lessor of the nonresidential premises on which Debtor's Restaurant is located pursuant to an unexpired Lease. Debtor is electing to assume the Lease pursuant to 11 U.S.C. §365(b)(1), and will cure the rent | No |

| | | | | |
|---|---|---|---|---|
| | | | payment default in three (3) equal Distributions of $21,361.34 each, to be made to Class 5 on the first three Plan Distribution dates, with the First Distribution to be made on the Effective Date. | |
| Class 6 | Allowed Convenience Claims | $7,868.66 | Class 6 is comprised of Unsecured Creditors holding Allowed Unsecured Claims of $2,500.00 or less, all of which are vendors, trade creditors and utility providers. Pursuant to 11 U.S.C. §1122(b), this Plan designates all Allowed Unsecured Claims of $2,500.00 or less as a separate class of claims that is reasonable and necessary for administrative convenience. All Unsecured Claims in Class 6 will be deemed Allowed and will be paid a total of fifty percent (50%) of the amount of each such Convenience Claim in a single payment made on the Effective Date. | Yes |
| Class 7 | Allowed Unsecured Claims | $974,013.97 | Class 7 is comprised of Unsecured Creditors holding Allowed Unsecured Claims of more than $2,500.00. All Allowed Unsecured Claims in Class 7 will be paid the equivalent of twenty percent (20%) of the total amount of each such Allowed Unsecured Claim in equal quarterly Plan Distributions over the Plan Period, which is five (5) years from December 17, 2018, the date of the order of relief in this case. The First Distribution to Class 7 will be made on the Effective Date.<br><br>Any Class 7 Creditors holding Allowed Unsecured Claims of more than $2,500.00 may elect to reduce their claim to $2,500.00 and have their claim treated as a Class 6 Claim. | Yes |
| Class 8 | Equity Holders | $0.00 | Class 8, equity, will receive no Distributions under the Plan. Upon | Yes |

|  |  |  | Plan confirmation, the Bechna Purchase Transaction contemplated by this Plan will be deemed approved and Bechna will become owner of the equity interest in the Debtor free and clear of all liens, claims, interests and encumbrances other than as set forth in this Plan and the Confirmation Order. |  |
|---|---|---|---|---|

## ARTICLE VIII
## ALTERNATIVES TO PLAN AND LIQUIDATION ANALYSIS

There are three possible consequences if the Plan is rejected or if the Bankruptcy Court refuses to confirm the Plan: (a) the Bankruptcy Court could dismiss the Debtor's Chapter 11 Bankruptcy Case; (b) the Debtor's Chapter 11 Bankruptcy Case could be converted to a liquidation case under Chapter 7 of the Bankruptcy Code; or, (c) the Bankruptcy Court could consider an alternative plan of reorganization proposed by the Debtor or by some other party.

### 8.1. Dismissal

If the Debtor's Bankruptcy Case was to be dismissed, the Debtor would no longer have the protection of the Bankruptcy Court and the applicable provisions of the Bankruptcy Code. Dismissal or conversion would result in the continuation of the Lanamar litigation to recover the Debtor's assets which secure Lanamar's Claim. If successful, there would be no remaining assets from which other Creditor claims could be paid, likely resulting in zero recovery for other Creditors.

### 8.2. Chapter 7 Liquidation

If the Plan is not confirmed, it is possible that the Debtor's Bankruptcy Case will be converted to a case under Chapter 7 of the Bankruptcy Code, in which case a trustee would be appointed to liquidate the Debtor's assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. Whether a bankruptcy case is one under Chapter 7 or Chapter 11, Secured Claims, Administrative Claims, and Priority Unsecured Claims are entitled to be paid in full before unsecured creditors receive any funds. The Chapter 7 trustee would be entitled to receive the compensation allowed under 11 U.S.C. § 326. The trustee's compensation is based on 25% of the first $5,000 or less; 10% of any amount in excess of $5,000 but not in excess of $50,000; 5% of any amount in excess of $50,000 but not in excess of $1,000,000; and reasonable compensation not to exceed 3% percent of any amount in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the Debtor, but including holders of secured claims.

The Debtor's Secured Creditor, Lanamar, has a lien on substantially all of the Debtor's assets and as a result, there would be little or no assets remaining to be liquidated by a trustee to pay other Creditors, resulting in a no asset liquidation case.

**8.3. Risk Analysis**

The Debtor believes there is minimal risk to the Creditors if the Plan is confirmed, and a substantially greater benefit to Creditors than would result from either a dismissal or a liquidation. In either of the former events, the only Creditor likely to recover any portion of its Claim is Lanamar, the Debtor's Secured Creditor.

**ARTICLE IX**
**DISCLOSURES AND VOTING PROCEDURES**

The Debtor, through counsel and pursuant to Sections 1121 and 1123 of the Bankruptcy Code and Rule 3016 of the Bankruptcy Rules, proposes its Plan of Reorganization and incorporated Disclosure Statement under Chapter 11 of the Bankruptcy Code. The Plan provides, *inter alia*, the means for distributing funds collected by the Debtor to its Creditors. Creditors have the opportunity to vote to accept or reject the Plan. The purpose of this incorporated Disclosure Statement is to provide information deemed to be material, important and appropriate to enable Creditors to arrive at a reasonably informed decision.

**NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS PLAN OR THE SOLICITATION OF ITS ACCEPTANCE. ALL CREDITORS AND INTEREST HOLDERS ARE HEREBY ADVISED AND ENCOURAGED TO READ THIS PLAN IN ITS ENTIRETY, THE EXHIBITS HERETO AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE COURT PRIOR TO OR CONCURRENT WITH THE FILING OF THIS PLAN. SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE MADE THAT (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN ARE MATERIALLY ACCURATE; OR (B) THAT THIS PLAN CONTAINS ALL MATERIAL INFORMATION.**

**THE DISCLOSURES CONTAINED HEREIN ARE REQUIRED TO BE PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.**

**THE FINANCIAL INFORMATION CONTAINED IN THIS PLAN HAS BEEN PREPARED BY THE DEBTOR AND ITS COUNSEL AND HAS NOT BEEN SUBJECT TO INDEPENDENT REVIEW OR CERTIFIED AUDIT. THE DEBTOR HAS MADE EVERY EFFORT TO ENSURE THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE; HOWEVER, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THIS INFORMATION IS WITHOUT ANY INACCURACY.**

**THIS PLAN AND INCORPORATED DISCLOSURE STATEMENT MUST BE APPROVED BY THE COURT AS CONTAINING "ADEQUATE INFORMATION" FOR HOLDERS OF CLAIMS AND INTERESTS TO MAKE AN INFORMED DECISION IN ACCORDANCE WITH SECTION 1125(b) OF THE BANKRUPTCY CODE REGARDING WHETHER TO ACCEPT OR REJECT THE DEBTOR'S PROPOSED PLAN. APPROVAL OF THE DISCLOSURES BY THE COURT DOES NOT INDICATE THE COURT RECOMMENDS EITHER ACCEPTANCE OR REJECTION OF THE PLAN.**

**YOU SHOULD READ THIS PLAN IN ITS ENTIRETY BEFORE VOTING ON THE PLAN.**

Section 1126 of the Bankruptcy Code entitles "impaired" classes of claims or interests to vote to accept or reject a proposed plan of reorganization. If a plan of reorganization contemplates the full payment of claims on the Effective Date, those classes of claims or interests would not be entitled to vote to accept or reject the plan as a matter of law.

All votes to accept or reject the Plan garnered through the ballots distributed in connection with the Plan will be used to confirm the Plan pursuant to either Section 1129(a) or Section 1129(b) of the Bankruptcy Code. Ballots for acceptance or rejection of the Plan will be provided subsequently to members of such voting classes that may be defined as impaired.

For a summary description of the treatment of each Class of Claims and interests and the estimated value of the Distribution to each Class of Claims and interests, *see* Article VIII.

As a Creditor, your vote is important. In order for the Plan to be deemed accepted, of the ballots cast, Creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims of a Class must accept the Plan in order that such Class be deemed to have accepted the Plan. However, even if a particular Class or Classes fails to accept the Plan, under the "cram-down" provisions of the Bankruptcy Code, assuming that the Plan is fair and equitable, the Debtor may still be afforded the right under the Bankruptcy Code to have the Plan confirmed over the objections of dissenting Creditors so long as the plan is consistent with other provisions and limitations set forth in the Bankruptcy Code.

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS PLAN. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE, OTHER THAN AS CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON IN ARRIVING AT YOUR DECISION IN CASTING YOUR BALLOT(S) ON THE PLAN. SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE PLAN PROPONENT, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE UNITED STATES TRUSTEE FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.**

You are urged to carefully read the contents of this Plan before making your decision to accept or reject the Plan. Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they presently exist.

**THE INFORMATION CONTAINED IN THIS PLAN HAS BEEN SUBMITTED BY DEBTOR'S MANAGEMENT, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. NO REPRESENTATIONS CONCERNING THE DEBTOR, OTHER THAN THOSE SET FORTH HEREIN, ARE AUTHORIZED BY THE DEBTOR.**

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1.  Leases and Executory Contracts**

The Bankruptcy Code gives the Debtor the power, subject to the approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases. Rejection or assumption may be affected pursuant to a plan of reorganization.

On the Effective Date, every executory contract and unexpired lease of the Debtor will be deemed assumed unless specifically rejected by separate motion filed prior to the Confirmation Hearing.  Specifically, the Debtor intends to assume the Lease at 1450 Brickell Avenue, Miami, FL 33131.

If an executory contract or unexpired lease is rejected, then the other party to the agreement may file a Claim for damages incurred by reason of rejection within such time as the Bankruptcy Court may allow. In the case of rejection of employment agreements and leases of real property, damages are limited under the Bankruptcy Code. The Debtor is not aware of any leases or executory contracts to be rejected at this time. To the extent there are any executory contracts or leases rejected by the Debtor, **ANY PROOF OF CLAIM FOR DAMAGES ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR LEASE MUST BE FILED WITH THE COURT WITHIN THIRTY DAYS AFTER THE ENTRY OF THE ORDER CONFIRMING THE PLAN.**

## ARTICLE XI
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

There may or may not be income tax consequences depending upon how each Creditor may have handled its claim from a tax perspective. It is suggested that you consult with your accountant in respect to any potential tax consequences that might result from the confirmation of this Plan, and the Distributions.  No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this Plan. No rulings or determination of the IRS or any other tax authorities have been sought or obtained with respect to any tax consequences of the Plan.

## ARTICLE XII
## PROVISIONS FOR CONTESTED CLAIMS AND INTERESTS

**12.1.   Objections to Claims**

Unless otherwise ordered by the Court, all objections to Claims shall be filed by one (1) year from the Effective Date. If a Claim is objected to prior to the Confirmation Hearing, such claimant shall not have the right to vote to accept or reject the Plan until the objection is resolved, unless such claimant requests an order from the Court pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes only.

**12.2.   No Distributions Pending Allowances**

Notwithstanding any other provisions of the Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Contested Claim unless and until such Contested Claim becomes an Allowed Claim.

### 12.3.    Withholding and Distribution in Respect of Contested Claims

The Debtor will withhold that which would otherwise be distributed to holders of Claims within a given Class an amount sufficient to be distributed on account of Claims that are not Allowed Claims within that Class until the Contested Claim is resolved.

### 12.4.    Distribution in Respect of Contested Claims

Upon a Contested Claim becoming an Allowed Claim, all reserved funds with respect to such Claim shall be distributed to such Claimant. Upon a Contested Claim becoming disallowed, then the reserved funds will be distributed to Allowed Claims in order of priority.

## ARTICLE XIII
## EFFECT OF PLAN ON CLAIMS AND INTERESTS

### 13.1.    Revesting of Assets

On the Effective Date, title to all of the Debtor's assets will revest in the Reorganized Debtor, free and clear of all claims and interests, except as otherwise expressly stated in the Plan. On the Effective Date, the Reorganized Debtor may use, acquire and dispose of all property, free and clear of all claims and interests in this case, except as otherwise provided in this Plan or the Confirmation Order.

### 13.2.    Discharge

Commencing on the Effective Date, except as otherwise expressly provided, all holders of Claims shall be precluded forever from asserting against the Debtor's estate, the Debtor or their assets, any other or further liabilities, liens, obligation, claims or equity interest, arising or existing prior to the Effective Date, that were or could have been the subject of any Claim, whether or not Allowed. As of the Effective Date, the Debtor shall be discharged, and shall hold the assets received or retained by and pursuant to the Plan, free and clear of all liabilities, liens, claims and obligations or other claims of any nature against the Debtor or its estate, except those duties and obligations created by the Plan.

This Plan provides that upon the Effective Date, the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141. However, any liability imposed by the Plan will not be discharged.

### 13.3.    Final Decree

Once the estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Debtor or the Liquidating Trustee, as the case may be, or such other parties as the Court shall designate in the Confirmation Order shall file a motion with the Court to obtain a final decree to close the case.

### 13.4.  Injunction

In accordance with section 524 of the Bankruptcy Code and section 105(a) of the Bankruptcy Code, the discharge provided by this Plan and section 1141 of the Bankruptcy Code, and the injunction issued pursuant to this Plan and the Court's powers under section 105(a) among other things, acts as a permanent injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims or Interests against the Debtor. All Classes, and the members thereof, all Creditors, and all Interested Parties shall be bound by this injunction pursuant to both 524(a) and 105(a).

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE CONFIRMATION ORDER, OR A SEPARATE ORDER OF THE BANKRUPTCY COURT, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST OR EQUITY INTEREST IN THE DEBTOR AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, OR PRINCIPALS, ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, FROM: (I) COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION, OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR OR REORGANIZED DEBTOR WITH RESPECT TO ANY SUCH CLAIM OR EQUITY INTEREST; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR OR REORGANIZED DEBTOR ON ACCOUNT OF ANY SUCH CLAIM OR EQUITY INTEREST; (III) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR REORGANIZED DEBTOR OF ANY SUCH CLAIM OR EQUITY INTEREST; (IV) COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION, OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CLAIMS AND CAUSES OF ACTION WHICH ARE EXTINGUISHED OR RELEASED PURSUANT TO THE PLAN; AND (V) TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN.**

**UNLESS OTHERWISE PROVIDED IN THE PLAN, THE CONFIRMATION ORDER, OR A SEPARATE ORDER OF THE BANKRUPTCY COURT, ALL INJUNCTIONS OR STAYS ARISING UNDER OR ENTERED DURING THE CHAPTER 11 CASE UNDER 11 U.S.C. §§ 105 OR 362, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE LATER OF THE EFFECTIVE DATE OR THE DATE INDICATED IN SUCH APPLICABLE ORDER.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY SET FORTH HEREIN, THE FOREGOING RELEASES AND INJUNCTIONS SHALL NOT PROHIBIT OR IMPAIR THE RIGHTS OF ANY PARTIES TO COMMENCE OR PURSUE ACTIONS BASED ON FRAUD OR VIOLATIONS OF APPLICABLE SECURITIES LAW.**

### 13.5.  Exculpation

Except as otherwise specifically provided herein, the Debtor, its officers, directors, members, managers, employees, representatives, attorneys, financial advisors, agents, affiliates, or any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action or liability to one another or to any holder of a Claim or an interest, or any other party in interest, or any of their respective officers, directors, employees, representatives, attorneys, financial advisors, partners, members of partners, managers or members of partners, or agents, or affiliates, or any of such parties' successors and assigns, for any act or omission in connection with (1) the preparation of this Plan; (2) the administration of this Case; (3) the pursuit of Confirmation of the Plan; or (4) the distribution of property under the Plan, except for their willful misconduct, bad faith, breach of fiduciary duty or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

### 13.6. <u>Savings Clause</u>

If any article, section, terms and/or subdivision of this Plan is ruled by the Bankruptcy Court to be improper or ineffective, or, if the Debtor decides to unilaterally remove any article, section, subsection, term, and/or provision of this Plan at the Confirmation Hearing, this Plan shall proceed to confirmation and be confirmed without the article(s), section(s), subsection(s), term(s), and/or provision(s) found to be improper or ineffective and/or unilaterally removed by the Debtor at the Confirmation Hearing.

### 13.7. <u>No Waiver of Causes of Action or Right to Set Off</u>

No provision of this Plan or the acceptance of any distributions hereunder shall compromise, settle or release any claims or causes of action belonging to the Debtor.

## <u>ARTICLE XIV: EFFECTIVENESS OF THE PLAN</u>

### 14.1. Conditions Precedent – Entry of Confirmation Order

The Plan shall not become effective unless and until the Court shall have entered the Confirmation Order confirming and approving the Plan in all respects by the Confirmation Date and the Confirmation Order shall become a Final Order.

### 14.2. Waiver of Deadlines or Other Conditions

As contemplated by the definition of Confirmation Date and Effective Date herein, the deadlines set forth above may be extended (if necessary) or as may be necessary to reasonably accommodate the Court's Calendar.

### 14.3. Default Remedies

If the Debtor fails to perform as required by this Plan, the Debtor shall be in default. In the event of a default, an affected Creditor shall provide written notice to and the Debtor shall have ten working days thereafter to cure the default. If the Debtor fails to cure the default, the discharge and

the injunctive provisions of this Plan will no longer be applicable to this creditor, and the creditor may proceed to enforce its rights under state law.

## ARTICLE XV: ADMINISTRATIVE PROVISIONS

### 15.1.    Retention of Jurisdiction

The Court shall retain jurisdiction over all matters arising in or related to the Chapter 11 Case, the Plan, the and the Liquidating Trust with respect to all claims against the Debtor, for the following purposes:

i.      To hear and determine pending motions for the assumption or rejection of the executory contracts or unexpired leases and disputed issues concerning termination of contracts, if any are ending, and the allowance of Claims resulting therefrom;

ii.     To determine any and all pending adversary proceedings, contested matters, applications and unresolved motions;

iii.    To hear and determine timely and proper objections to Claims and Interests filed both before and after the Confirmation Date by the Reorganized Debtor, including objections to the classification, estimation, establishment of priority or status of any Claim or Interest, and to allow or disallow any Contested Claim or Interest, in whole or in part, as contemplated in the Plan;

iv.    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

v.     To consider modifications of the Plan, if any, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

vi.    To hear and determine all claims and causes of action to recover Assets of the Debtor or Reorganized Debtor, wherever located, including any causes of action under applicable sections of the Bankruptcy Code;

vii.   To hear and determine all controversies arising in connection with the Plan and other matters provided for in the Confirmation Order; and

viii.  To hear and determine all controversies arising in connection with this Plan and its implementation, to interpret this Plan, and to enter a final decree closing the Chapter 11 case.

## ARTICLE XVI: MISCELLANEOUS

### 16.1.    Special Tax Provisions

Pursuant to 11 U.S.C. § 1146(a), any post-Confirmation Date transfer from the Debtor to any person pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable law, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan.

### 16.2.    Existing Organizational Documents

The Debtor's Existing Organizational Documents shall not be amended, modified or changed in any respect that would affect the Distributions required by this Plan.

### 16.3.    Headings

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any purpose.

### 16.4.    Binding Effect

The Plan shall be binding on and inure to the benefit of the Debtor, the Reorganized Debtor, and all of the holders of Claims and Interests and their respective successors and assigns.

### 16.5.    Modifications of Plan and Related Documents

The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan in any manner necessary prior to entry of the Confirmation Order. After entry of the Confirmation Order, the Debtor may: (1) amend or modify the Plan and documents related thereto in accordance with, and to the extent permitted by, section 1127(b) of Bankruptcy Code and Bankruptcy Rule 3019, or (2) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### 16.6.    Filing or Execution of Additional Documents

On or before the Effective Date, the Debtor shall file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 16.7.  Substantial Consummation

The Plan shall be deemed substantially consummated upon the Effective Date.

### 16.8.  Notices

All notices, requests, demands and other communications to or upon the Debtor shall be in writing and shall be delivered by email and by U.S. Mail (postage prepaid) to all of the following:

> Tamara D. McKeown, Esq.
> One Biscayne Tower, 34th Floor
> 2 S. Biscayne Blvd.
> Miami, Florida 33131
> gaaronson@aspalaw.com

### 16.9.  Inquiries

Any inquiries with respect to this Plan should initially be made to your counsel. Any responses to specific inquiries have not been pre-approved by the Court. Nevertheless, informal inquiry about the terms and conditions of this Plan may be made to Tamara D. McKeown at the telephone number set forth below.

## ARTICLE XVII: CONCLUSION

THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS DESIRABLE AND IN THE BEST INTERESTS OF CREDITORS AND INTEREST HOLDERS.

This Plan provides for equitable distributions to all Classes of the Debtor's creditors. Any alternative to confirmation of the Plan, such as liquidation under Chapter 7 of the Bankruptcy Code or attempts by another party in interest to file a plan, would result in significant delays, litigation, and costs. More importantly, the Plan proposes a distribution to unsecured creditors greater than such creditors would receive in the absence of the Plan. The Debtor believes that a plan filed by another party in interest could only be confirmed over the objection of one or more impaired Classes and would generate costly and time-consuming litigation. Any delays in the confirmation of the Plan would jeopardize the viability of the Debtor as a going concern, and therefore diminish the probability of distributions to unsecured creditors. The Debtor believes its creditors will receive greater recoveries under this Plan than those which could otherwise be achieved.

> Respectfully submitted,
> Aaronson Schantz Beiley P.A.
>
> /s/ *Tamara D. McKeown*
> Tamara D McKeown, Esq.
> Florida Bar No. 773247
> tmckeown@aspalaw.com
> One Biscayne Tower, Floor 34
> 2 S. Biscayne Boulevard

Miami, Florida 33131
Tel. 786.594.3000
Fax 305.579.9073
*Attorneys for Debtor*

/s  Ivan Marzal
Ivan Marzal, Managing Member
Valentia Global, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing will be furnished on June 17, 2019 via email to all CM/ECF electronic notice parties through the Court's CM/ECF system.

s/ *Tamara D. McKeown*
Tamara D. McKeown

39